1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

VIAVI SOLUTIONS INC.,

Plaintiff,

v.

PLATINUM OPTICS TECHNOLOGY INC.,

Defendant.

Case No.   5:21-cv-06655-EJD

**ORDER GRANTING MOTION FOR SUMMARY JUDGMENT**

Re: ECF No. 89

Before the Court is Defendant's motion for summary judgment.  ECF No. 89.  The Court heard oral argument on December 15, 2022.  For the reasons discussed herein, the Court GRANTS Defendant's motion.

I.      **BACKGROUND**

Plaintiff Viavi Solutions Inc. ("Viavi") is a U.S.-based company headquartered in Delaware that designs optical filters using hydrogenated silicon for 3D motion sensing.  First Am. Compl. ("FAC"), ECF No. 21 ¶¶ 4, 19.  It holds various patents associated with this technology.  *Id.* ¶¶ 3, 5.  Suppliers to electronic device manufacturers incorporate these patented filter designs into their optical filters, which are, in turn, used to produce sensing systems in mobile phones and tablets that use facial and gesture recognition technology.  *Id.* ¶ 10.  Viavi is purportedly "the industry's leading supplier of high-performance filters for motion sensing systems in consumer electronics."  *Id.* ¶ 9.

Defendant Platinum Optics Technology Inc. ("PTOT") is a Taiwan-based company that manufactures optical filters that employ hydrogenated silicon, which allegedly utilizes Viavi's patented technology.  *Id.* ¶¶ 12, 20.  PTOT represents that it is "one of the few manufacturers" that

provide optical filters for 3D motion sensing modules to electronic device manufacturers.  *Id.* ¶ 13.

Viavi alleges that since May 1, 2020, PTOT has been making and selling low angle shift optical

filters that employ hydrogenated silicon layers as a high refractive index layer—filters which

include Viavi's patented technology (hereinafter, the "Accused Filters")—for inclusion in

electronic devices that contain 3D camera devices.  *Id.* ¶ 12.  These devices are allegedly imported

and sold in the U.S.  *Id.*  On July 14, 2020, Viavi sent PTOT a letter asserting that the Accused

Filters were infringing Viavi's patents and that PTOT was knowingly selling its filters for

incorporation into mobile devices to third party Company[1] intended for the U.S. market.  *Id.* ¶ 14.

Viavi initiated this action arising under 35 U.S.C. § 271(b) on August 27, 2021, seeking a

judgment that PTOT induced infringement of at least one claim of each of the following patents:

(1) U.S. Patent No. 9,354,369 (the "'369 patent"); (2) U.S. Patent No. 9,588,269 (the "'269

patent"); (3) U.S. Patent No. 10,222,526 (the "'526 patent"); and (4) U.S. Patent No. 11,131,794

(the "'794 patent") (collectively, the "Asserted Patents").[2]  *See generally* FAC.  Viavi seeks past

and future compensatory damages, including lost profits, prejudgment interest, and any other

available damages based under 35 U.S.C. § 284.  *Id.* at 10 ("Prayer for Relief) ¶ 2.  Viavi also

requests an award of any other supplemental damages, including attorneys' fees and costs

incurred, pursuant to 35 U.S.C. § 285.  Prayer for Relief ¶ 3.

On October 21, 2022, Viavi moved for leave to file a second amended complaint ("SAC")

based on newly discovered information.[3]  *See* ECF No. 87.  One week later, on October 28, 2022,

PTOT filed a motion for summary judgment of non-infringement ("MSJ") and opposed Viavi's

---

[1] The Court will refer to "Company" throughout this Order to maintain the confidentiality of the third-party company, which has been redacted from the parties' filings.
[2] Viavi has since voluntarily dismissed it's claim with respect to U.S. Patent No. '369.  *See* ECF No. 26.
[3] The Court is in an unusual position due to the timing of the parties filing their motions.  Because the Court recently granted leave to file an amended complaint alleging direct infringement while Defendant's motion for summary judgment on Plaintiff's induced infringement claim was pending, the Court will construe Defendant's motion as a partial motion for summary judgment without requiring the parties to refile their briefs.  Plaintiff may file the SAC pursuant to the Court's Order granting leave to file an amended complaint and incorporating the Court's ruling on this motion.

United States District Court
Northern District of California

1    motion ("Opp'n").  *See* MSJ, ECF No. 89; Opp'n, ECF No. 98.

2    **II.    LEGAL STANDARD**

3          Summary judgment is proper where the pleadings, discovery, and affidavits show that

4    there is "no genuine issue as to any material fact and that the moving party is entitled to judgment

5    as a matter of law."  Fed. R. Civ. P. 56(c).  A fact is "material" if it would affect the outcome of

6    the suit under the governing law, and a disputed issue is "genuine" if the "evidence is such that a

7    reasonable jury could return a verdict for the non-moving party."  *Anderson v. Liberty Lobby, Inc.*,

8    477 U.S. 242, 248–49 (1986).

9          The party moving for summary judgment bears the initial burden of identifying those

10   portions of the record which demonstrate the absence of a genuine issue of material fact.  *See*

11   *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  Where the nonmoving party bears the burden

12   of proof at trial, "the burden on the moving party may be discharged by 'showing'—that is,

13   pointing out to the district court—that there is an absence of evidence to support the nonmoving

14   party's case."  *Id.* at 325.  If the moving party can meet this initial burden, the burden then shifts to

15   the non-moving party to produce admissible evidence and set forth specific facts showing that a

16   genuine issue of material fact does indeed exist for trial.  *See Nissan Fire & Marine Ins. Co. v.*

17   *Fritz Companies, Inc.*, 210 F.3d 1099, 1103 (9th Cir. 2000).  If the non-moving party produces

18   enough evidence to show a genuine issue of material fact exists, then it defeats the motion;

19   otherwise, the moving party is entitled to summary judgment.  *Id.*

20         In considering a motion for summary judgment, the Court must view the evidence in the

21   light most favorable to the non-moving party.  *See Tolan v. Cotton*, 572 U.S. 650, 655 (2014).

22   The Court may not weigh conflicting evidence as to a disputed fact nor may it make credibility

23   determinations; any disputed factual issues must be resolved in favor of the non-moving party.

24   *See T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630–31 (9th Cir. 1987).

25   However, the Court need not credit the non-moving party's version of events where it is blatantly

26   contradicted by the record.  *See Orn v. City of Tacoma*, 949 F.3d 1167, 1171 (9th Cir. 2020).

27

28   Case No.: 5:21-cv-06655-EJD
     GRANTING DEF.'S MOT. FOR SUMM. J.

United States District Court
Northern District of California

## III.   DISCUSSION

The FAC alleges that PTOT induced infringement of the Asserted Patents pursuant to 35 U.S.C. § 271(b).  PTOT moves for summary judgment of non-infringement on the basis that Viavi has failed to satisfy the requisite elements of induced infringement.  MSJ at 4.

Section 271 provides "[w]however actively induces infringement of a patent shall be liable as an infringer."  35 U.S.C. § 271(b).  A patentee asserting induced infringement must show the following three elements: (1) the accused inducer "directly infringed the asserted claims" of the patents, *Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*, 843 F.3d 1315, 1332 (Fed. Cir. 2016), (2) "the accused inducer took an affirmative act to encourage infringement" and (3) the accused inducer had "the knowledge that the induced acts constitute patent infringement," *Astornet Techs. Inc. v. BAE Sys., Inc.*, 802 F.3d 1271, 1279 (Fed. Cir. 2015).  A patentee must show more than mere knowledge that the acts alleged constitute infringement; the accused inducer must "possess[] specific intent to encourage another's infringement."  *Minn. Mining & Mfg. Co. v. Chemque, Inc.*, 303 F.3d 1294, 1304–05 (Fed. Cir. 2002); *see also Microsoft Corp. v. DataTern, Inc.*, 755 F.3d 899, 904 (Fed. Cir. 2014).  In other words, Viavi must show both that PTOT "knowingly induced infringement and possessed specific intent to encourage another's infringement."  *Kyocera Wireless Corp. v. Int'l 12 Trade Comm'n*, 545 F.3d 1340, 1353–54 (Fed. Cir. 2008) (citation omitted).

The knowledge requirement may be satisfied by circumstantial evidence showing "knowledge that the induced acts constitute patent infringement" or willful blindness as to the same.  *Glob.-Tech Appliances, Inc. v. SEB S.A.*, 563 15 U.S. 754, 766 (2011); *see also MEMC Elec. Materials, Inc. v. Mitsubishi Materials Silicon Corp.*, 420 F.3d 1369, 1380 (Fed. Cir. 2005) (inducement may be proven via circumstantial evidence).  The patentee's burden of proof in showing these facts is by a "preponderance of the evidence . . . which simply requires providing that the infringement was more likely than not to have occurred."  *Warner-Lambert Co. v. Teva Pharm. USA, Inc.*, 418 F.3d 1326, 1341 n.15 (Fed. Cir. 2005).  "[F]or purposes of induced infringement liability, willful blindness has two requirements: '(1) the defendant must subjectively

1    believe that there is a high probability that a fact exists and (2) the defendant must take deliberate

2    actions to avoid learning of that fact.'" *Largan Precision Co, Ltd v. Genius Elec. Optical Co.*, 86

3    F. Supp. 3d 1105, 1119 (N.D. Cal. 2015) (quoting *Glob.-Tech Appliances, Inc. v. SEB S.A.*, 563

4    U.S. 754, 769 (2011)).  For example, "[w]illful blindness requires not just a failure to ask whether

5    any sales infringed, but an affirmative act to remain ignorant of infringing sales." *Largan*

6    *Precision Co, Ltd*, 86 F. Supp. 3d at 1120.

      **1.      Whether Viavi can show that PTOT knowingly induced infringement**

8          PTOT contends that Viavi has failed to show that PTOT knowingly induced infringement

9    or was willfully blind of such infringement in the U.S.  MSJ at 11.  "[I]nducement requires

10   evidence of culpable conduct, directed to encouraging another's infringement, not merely that the

11   inducer had knowledge of the direct infringer's activities." *DSU Med. Corp. v. JMS Co.*, 471 F.3d

12   1293, 1306 (Fed. Cir. 2006).

13         PTOT asserts that it does not sell filters directly to Company.  MSJ at 12.  PTOT maintains

14   that it sells filters to customers in Asia, and it does not know whether those filters are ultimately

15   incorporated in Company's products sold in the U.S. due to a "complex and opaque supply chain."

16   *Id.* at 11; *see* Lin Dep. Tr. 163:9-12 ("PTOT only knows that the Company-approved band pass

17   filters manufactured by PTOT were shipped to the [module integrator], and PTOT does not know

18   the whereabouts of the filters subsequently").  PTOT describes a four-step supply chain where: (1)

19   PTOT sells the filters to its customers in Asia; (2) "downstream integrators" (or "module

20   integrators") incorporate the filters into its lenses and camera modules; (3) the lenses and camera

21   are supplied to "system integrators" who further assemble the lenses and camera modules into

22   mobile phones and tablets; and finally, (4) the assembled phones and tablets are sold to Company

23   in the U.S for sale worldwide.  *Id.* at 13.  PTOT states that it "has no insight and cannot track how

24   its filters travel in the global stream of commerce." *Id.* at 7–8.

25         There is no dispute that filters and lenses are randomly incorporated at many, if not all, of

26   the muti-supply chain process.  For example, the parties agree that system integrators, who

27   assemble Company mobile phones and tablets, are "aware that Viavi and PTOT are the two

United States District Court
Northern District of California

suppliers of optical filters used in camera modules installed in [Company] mobile devices, and receives the assembled camera modules incorporating their filters . . . and installs them into [Company's] mobile devices."  ECF No. 88-13 ¶¶ 3-4; *see* MSJ at 8; ECF No. 109 ("Opp'n") at 4. The parties also agree that the system integrators treat lenses that have Company's specifications indiscriminately such that "camera modules are not selected for incorporation into [Company's] mobile devices based on camera module vendor."  Opp'n at 4 (citing ECF No. 88-13 ¶ 5); *see also* MSJ at 8.  Finally, it is undisputed that camera modules with Company's specifications are likewise installed in Company's mobile devices indiscriminately with respect to the country where it's mobile device will be sold.  ECF No. 88-13 ¶ 6; *see* MSJ at 8; Opp'n at 4.

According to PTOT, the nature of this supply chain negates the knowledge requirement of inducement.  MSJ at 12.  PTOT cites *Largan* in support of this argument, a case that involved optical lenses sold in an identical supply chain.  *Largan Precision Co, Ltd v. Genius Elec. Optical Co.*, 86 F. Supp. 3d 1105 (N.D. Cal. 2015).  Plaintiff Largan and Defendant Genius both supplied lenses to Apple and Motorola for incorporation into cellphones and tablets.  *Id.* at 1107.  Genius sold its lenses to module integrators in Asia, and module integrators combined the lenses with other components to build cameras.  *Id.* at 1109.  The module integrators then sold the cameras to system integrators located in Asia who incorporated the cameras into phones and tablets.  *Id.* Finally, the phones and tablets were sold to Apple or Motorola for sale to end users in the United States and various other countries.  *Id.*  Like PTOT, Genius's employees did not know where the lenses incorporated into Apple or Motorola products ended up, although it was undisputed that Genius sold a fraction of accused products directly to Apple in Cupertino.  *Id.*

Genius argued that, because of the multi-step supply chain, it did not know whether its lenses go into products that are sold into the U.S.  *Id.* at 1118.  The district court agreed with Genius regarding the lenses that were not solely provided by Genius,[4] noting that "[f]or all Genius knows, Apple and Motorola's supply chain could be structured in such a way that all of the Apple

---

[4] There were two categories of filters at issue in *Largan*: filters of which Genius was the sole supplier and filters of which Genius was one of multiple suppliers.

and Motorola end products that are sold in the United States incorporate only lenses sold by Largan or other suppliers, rather than Genius." *Id.* at 1118. Thus, the court concluded that, even if Genius *did* induce Apple and Motorola to use its filters, it would still lack the requisite knowledge that the included acts constituted infringement because the products could be sold outside the U.S., *i.e.*, not infringe the asserted patents. *Id.*

PTOT asks the Court to follow *Largan* and grant its motion for summary judgment of no induced infringement. Viavi argues that the court should deny summary judgment because (1) PTOT knows that its filters are sold in the United States based on circumstantial evidence or (2) PTOT is willfully blind to that fact. Opp'n at 9. Viavi contends that, unlike in *Largan*, Viavi has presented sufficient circumstantial evidence establishing a genuine disputed fact of whether PTOT knew its filters were sold in the U.S. *Id.*

### a.    Evidence of PTOT's knowledge and intent to induce

With respect to the first argument, Viavi contends that the following circumstantial evidence establishes disputed material facts: (1) discovery of a mobile device made by Company and sold in the U.S. with a non-Viavi manufactured infringing filter (Filter #25) and an admission by Company that only PTOT and Viavi supply that exact filter; (2) randomized filter incorporation at multiple steps in the supply chain; (3) PTOT's filters meet Company's technical specifications; and (4) the U.S. is one of Company's largest markets. For the reasons discussed below, drawing all inferences in the light most favorable to Viavi, a jury could not reasonably find that PTOT had the requisite knowledge or was willfully blind to the infringement.

First, Viavi argues that it found an Accused Filter in Company's mobile device sold in the U.S. Viavi alleges that in 2021—approximately a year after Viavi had sent PTOT a letter notifying it of the allegedly infringing filters—it purchased a mobile device in Colorado with an Accused Filter called "Filter #25" that was not manufactured by Viavi. *Id.* Viavi analyzed the filter and believes it is a PTOT-manufactured filter. *Id.* Viavi contends that there are only two manufacturers of this specific filter, Viavi and PTOT, which the Company has confirmed. *Id.* In response to Viavi's subpoena, Company stated that it "has determined that it sources bandpass

1    filters indirectly from only Viavi and PTOT." ECF No. 88-9 at 16. This fact, combined with the

2    fact that the U.S. is one of Company's largest markets, allegedly demonstrates that PTOT "knew

3    or should have known."[5] Opp'n at 11–12; Hector Decl., Ex. D.

4         PTOT contends that it also analyzed Filter #25 but concluded that the filter was not

5    manufactured by PTOT.[6] ECF No. 115 ("Reply") at 4; *see* ECF No. 88-23 ¶ 2; *see also* Opp'n at

6    16. Relying on *Largan*, PTOT argues that the fact that the parties dispute whether PTOT

7    manufactured Filter #25 does not create a genuine issue of material fact because, regardless, PTOT

8    maintains that it does not know where it's filters ultimately end up. Reply at 5. The Court agrees

9    that, even assuming the filter in the mobile device purchased in Colorado contains PTOT's filter,

10   the fact that PTOT's filter was sold in the U.S. does not inform the Court whether PTOT *knows*

11   that the end-products are sold in the U.S. Moreover, Viavi has not put forth any evidence

12   establishing that PTOT was aware that it was only one of two manufacturers of the Accused Filter.

13        The *Largan* opinion provides useful guidance. Largan argued that Genius was the "only

14   supplier" of the lens incorporated into a certain Apple product. *Largan Precision Co, Ltd*, 86 F.

15   Supp. 3d at 1119. Based on the evidence, the *Largan* court reasoned that it was unclear how

16   Genius would have known that it was the sole-supplier, and taken with "conflicting and uncertain

17   evidence demonstrates at most a genuine fact dispute about whether Genius ever knew it was the

18   sole supplier for certain products at certain time periods—a dispute that the Court cannot resolve

19   either way on summary judgment." Here, conversely, there is no allegation nor evidence that

20   PTOT was the *only* manufacturer of an Accused Filter. Viavi expressly asserts that there are only

21

22   _____

23   [5] The "knew or should have known" standard is no longer the correct legal standard. *See Glob.-Tech Appliances, Inc.*, 563 U.S. 754; *Roche Diagnostics Corp. v. Meso Scale Diagnostics, LLC*,

24   30 F.4th 1109, 1118 (Fed. Cir. 2022) ("While it's true that we previously applied a "knew or should have known" formulation, we've since made clear that, to the extent our prior case law

25   allowed the finding of induced infringement based on recklessness or negligence, such case law is inconsistent with *Global-Tech* and no longer good law.") (quotations and citation omitted).

26   [6] PTOT also contends that Viavi's direct infringement allegation does not appear in the FAC and therefore it cannot form the basis of Viavi's alleged issues of material fact. As previously stated,

27   because the Court granted Viavi's motion for leave to file an amended complaint, the Court will construe PTOT's motion as a partial motion for summary judgment only with respect to induced infringement.

28

two manufacturers of Filter #25.  Conversely, the *Largan* court found that, with respect to the filters of which Genius was one of multiple suppliers, there was a lack of evidence that Genius had the requisite knowledge or was otherwise willfully blind.

Viavi also contends the undisputed fact that PTOT's filters are randomly incorporated in Company's mobile phones and tablets that are destined for the U.S is circumstantial evidence of PTOT's knowledge.  Opp'n at 11.  However, PTOT argues this is precisely the argument that the *Largan* court rejected.  PTOT asserts the same argument as Genius—that it does not know where its lenses end up after they are sold to the module integrators.  *Id.* at 1118.  In other words, like Genius, PTOT does not know whether its lenses go into products that are sold into the U.S.  *Id.*; *see* MSJ at 11; Lin Dep. Tr. 163:9-12.

Viavi also cites the Federal Circuit's opinion affirming the *Largan* district court, which reasoned that "there is no evidence in the record that a single Apple product sold in the United States contained an accused Genius Lens" nor did Largan "present any evidence from the supply chain to establish what process the module integrators and system integrators used to select lenses in products designed for the United States."  *Largan Precision Co. v. Genius Elec. Optical Co.*, 646 F. App'x 946, 949 (Fed. Cir. 2016).  Here, Viavi presents evidence tending to show that PTOT's Accused Filter was sold in Company's mobile phone in the U.S.  Viavi also argues that Company's supply chain randomly selects between two suppliers, PTOT and Viavi, and unlike in *Largan*, Viavi has put forth sufficient evidence that filter incorporation is random in multiple steps in the supply chain.  However, for the reasons already discussed, this evidence does not necessarily speak to PTOT's knowledge or intent.  Indeed, the Federal Circuit focused only on whether Largan had established a direct infringement—a necessary threshold finding to establish induced infringement.  The Federal Circuit affirmed, holding that, because Largan failed to present evidence sufficient to establish a *prima facie* showing of direct infringement by Apple, and "induced infringement requires proof of underlying direct infringement, no reasonable jury could find Genius liable for induced infringement."  *Largan Precision Co*, 646 F. App'x at 950–51.

Viavi asserts that PTOT the company "disclaims knowledge of discovery" with respect to

United States District Court
Northern District of California

the two-supplier market and random incorporation of lenses because PTOT's outside counsel is aware of these facts.  Opp'n at 13–14.  Viavi argues that the knowledge of PTOT's lawyers is imputed to PTOT because they are purportedly acting as PTOT's agent in this action.  *Id.* at 14. The Court is not persuaded.  Viavi relies on the Ninth Circuit's decision in *Feature Realty, Inc. v. City of Spokane*, 331 F.3d 1082 (9th Cir. 2003), and a district court decision in *Veritas Operating Corp. v. Microsoft Corp.*, 562 F. Supp. 2d 1141 (W.D. Wash. 2008), holding that the lawyers' knowledge of the existence of the patents at issue was imputed onto Feature Reality, Inc. and Microsoft Corp., respectively.[7]  Neither case supports Viavi's assertion that confidential information provided by third parties pursuant to a protective order is imputed to PTOT by its outside counsel.

Finally, Viavi provides evidence that PTOT's filter meet Company's technical specifications.  Opp'n at 11; *see* ECF No. 88-3 at 5–7; 13–14.  PTOT's corporate representative testified that PTOT must provide documentation that the filters manufactured by PTOT meet Apple's specifications.  Lin Dep. Tr., at 20, 29, 31-32, 44-45, 124-125.  The fact that the products are capable of infringing because they meet certain specifications does not necessarily show requisite intent to induce.  *See Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1322 (Fed. Cir. 2009); *see also Skyworks Sols., Inc. v. Kinetic Techs., Inc.*, No. 14-CV-00010-SI, 2015 WL 881670, at *8–10 (N.D. Cal. Mar. 2, 2015) (no intent to induce infringement where plaintiff alleged that defendant "prepared marketing materials for the accused parts, provided technical support for the accused parts and deliberately provided accused parts for phones it knew were sold in the United States.").[8]

---

[7] As PTOT points out, in *Veritas*, knowledge of counsel was imputed under the now-rejected "constructive knowledge" or "should have known" standard.

[8] The Court does not conclude that manufacturing a product pursuant to a company's technical specifications could never be evidence from which a jury could infer intent to induce infringement, only that Viavi has not sufficiently demonstrated intent to induce under the facts before this Court.  *cf. Largan Precision Co, Ltd*, 86 F. Supp. 3d at 1119 (holding that a jury could "infer intent and affirmative acts to induce infringement based on [defendant's] attempts to design lenses to meet Apple's specifications," assuming that defendant knows those lenses end up in the U.S.).

Case No.: 5:21-cv-06655-EJD
GRANTING DEF.'S MOT. FOR SUMM. J.

1    Thus, Viavi has not produced sufficient evidence from which a jury could infer that PTOT

2    possessed the specific intent to induce infringement.

3                        **b.    Evidence of "willful blindness"**

4    Nor has Viavi established that PTOT willfully blinded itself to Company's infringing acts.

5    Opp'n at 15–16.  "[F]or purposes of induced infringement liability, willful blindness has two

6    requirements: '(1) the defendant must subjectively believe that there is a high probability that a

7    fact exists and (2) the defendant must take deliberate actions to avoid learning of that fact.'"

8    *Largan Precision Co, Ltd*, 86 F. Supp. 3d at 1119 (quoting *Glob.–Tech*, 563 U.S. at 769).  Viavi

9    once again relies on the unsupported allegation that PTOT knows that Viavi and PTOT are the

10   only two approved suppliers of the filter, and therefore there is a "high probably that devices with

11   its infringing filters are shipped to the United States," to establish that PTOT willfully turned a

12   blind eye.  Opp'n at 16.

13   First, Viavi accuses PTOT of deliberately analyzing Filter #25 incompletely "or in such a

14   way to avoid learning that the filter was its own."  *Id.* at 17.  Viavi provides no support to

15   substantiate this allegation.  Second, Viavi speculates that, when faced with Viavi's allegations of

16   infringement, PTOT neglected to ask Company "whether there are other approved filter suppliers

17   besides Viavi and PTOT," which necessarily assumes that PTOT *knew* it was one of only two

18   suppliers of the Accused Filter.  Opp'n at 17.  Finally, Viavi asserts that PTOT turned a blind eye

19   during discovery by "choosing" to remain "ignorant of harmful information" and has strategically

20   opposed discovery in the prior litigation between Viavi and PTOT, although Viavi provides no

21   additional detail or explains how PTOT's conduct veered from how parties normally behave

22   during discovery.  *Id.*; *see Viavi Sols. Inc. v. Platinum Optics Tech. Inc.*, Case No. 5:20-cv-05501.

23   Viavi argues the following actions by PTOT as evidence of active steps taken to encourage

24   infringement by Company: PTOT makes filters that meet Company's technical specifications;

25   PTOT attends regular meetings with Company and makes adjustments to its production capacity

26   following these meetings; PTOT discusses quality and technical issues with Company in the U.S.;

27   and PTOT has calls with Company's global supply managers located in the U.S. to discuss

28   Case No.: 5:21-cv-06655-EJD
     GRANTING DEF.'S MOT. FOR SUMM. J.

United States District Court
Northern District of California

1    production.  Opp'n at 19–20.  However, these facts do not support a finding of willful blindness.

2    The willfully blind standard "surpasses recklessness and negligence."  *Glob.–Tech*, 563 U.S. at

3    769.  "[I]nducement requires evidence of culpable conduct, directed to encouraging another's

4    infringement, not merely that the inducer had knowledge of the direct infringer's activities."  *DSU*

5    *Med. Corp.*, 471 F.3d at 1306; *Commil USA, LLC v. Cisco Sys., Inc.*, 575 U.S. 632, 632 (2015)

6    ("*Global–Tech* requires . . . proof the defendant knew the acts were infringing.").  Indeed, despite

7    a "significant amount of U.S.-based activity" on defendant's part, including, *inter alia*, "meeting

8    regularly with [Company] design engineers, sending product samples to [Company] for pre-

9    approval, attending sales meetings with its customers, and providing post-sale support for its

10   products" the Largan court nonetheless found that that these facts were insufficient to establish

11   willful blindness.  *Largan Precision Co, Ltd*, 86 F. Supp. 3d at 1111, 1119.

12        Thus, Viavi has failed to offer any evidence showing PTOT subjectively believed there

13   was a high probability that its filters were important and sold in the U.S. nor has Viavi shown any

14   deliberate action by PTOT.

15                                              * * *

16        In sum, PTOT has carried its burden of showing the absence of evidence as to the requisite

17   knowledge element of Viavi's claim, and Viavi has failed to show sufficient "facts demonstrating

18   the existence of genuine issues for trial."  *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th

19   Cir. 2010).  Accordingly, the Court GRANTS summary judgment with respect to induced

20   infringement.

21   **IV.    CONCLUSION**

22        Based on the foregoing, Defendant's motion for summary judgment of non-infringement is

23   GRANTED.  Because the Court recently granted Viavi's motion for leave to amend to add

24   allegations of direct infringement (ECF No. 141), the Court's ruling with respect to PTOT's

25   motion for summary judgment is not dispositive.

26

27

28   Case No.: 5:21-cv-06655-EJD
     GRANTING DEF.'S MOT. FOR SUMM. J.

United States District Court
Northern District of California

1

**IT IS SO ORDERED.**

2    Dated: October 13, 2023

3

4    _____

5    EDWARD J. DAVILA
     United States District Judge

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28   Case No.: 5:21-cv-06655-EJD
     GRANTING DEF.'S MOT. FOR SUMM. J.