David S. Bloch (Cal. Bar No. 184530)
Blochd@gtlaw.com
GREENBERG TRAURIG, LLP
101 Second St., Suite 2200
San Francisco, CA 94105
Telephone: 415.590.5110
Facsimile: 415.707.2010

Vivian S. Kuo (pro hac vice)
kuov@gltaw.com
Cyrus T. Frelinghuysen (pro hac vice)
frelinghuysenc@gtlaw.com
GREENBERG TRAURIG, LLP
2101 L Street, NW, Suite 1000
Washington, DC 20037
Telephone: 202.331.3100
Facsimile: 202.261.4747

Andrew R. Sommer (pro hac vice)
sommera@gtlaw.com
GREENBERG TRAURIG, LLP
1750 Tysons Boulevard
McLean, VA 22101
Telephone: 703.749.1370
Facsimile: 703.749.1301

*Attorneys for Defendant*
*Platinum Optics Technology Inc.*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN JOSE DIVISION**

| | |
|---|---|
| VIAVI SOLUTIONS INC.,<br><br>Plaintiff,<br><br>v.<br><br>PLATINUM OPTICS TECHNOLOGY INC.,<br><br>Defendant. | CASE NO. 5:21-cv-06655-EJD<br><br>**DEFENDANT PLATINUM OPTICS TECHNOLOGY INC.'S ANSWER TO THIRD AMENDED COMPLAINT, AFFIRMATIVE DEFENSES, AND COUNTERCLAIMS.**<br><br>**DEMAND FOR JURY TRIAL**<br><br>**REDACTED VERSION** |

Defendant Platinum Optics Technology Inc. by and through its undersigned counsel of record and for its Answer to the Third Amended Complaint of Plaintiff Viavi Solutions Inc., without admitting the legal sufficiency thereof and responding only to the factual allegations therein, hereby states as follows:

## NATURE OF ACTION

1. This is a patent infringement action. Viavi seeks damages for PTOT's infringement of Viavi's United States patents.

**Answer:** Paragraph 1 contains legal conclusions to which no response is required. To the extent a response is required, PTOT admits that Viavi's Third Amended Complaint purports to arise under the patent laws of the United States but denies that it has infringed any of the Asserted Patents. PTOT specifically denies that any of Viavi's claims have merit.

## INTRADISTRICT ASSIGNMENT

2. This is an Intellectual Property action and shall be assigned on a district-wide basis pursuant to Civil L.R. 3-2(c) and this Court's Assignment Plan.

**Answer:** Admitted.

## FACTUAL BACKGROUND

3. Viavi, formerly known as JDS Uniphase Corporation, is a pioneer and world leader in the fields of three-dimensional (3D) motion sensing technology, light management, and optical coatings, among others.

**Answer:** Denied.

4. The inventions disclosed in U.S. Patent Nos. 9,588,269 ("the '269 patent"), 10,222,526 ("the '526 patent"), and 11,131,794 ("the '794 patent"), (collectively "the Asserted Patents") (Exhibits 1, 2, and 3) and exemplified in Viavi's state-of-the-art optical filters are indicative of Viavi's status as a world leader in 3D motion sensing technology.

**Answer:** PTOT denies that the Asserted Patents disclose "inventions." To the extent the allegations in Paragraph 4 seek to paraphrase or characterize the content of a written document, the document speaks for itself, and PTOT denies the allegations inconsistent with that document. PTOT

specifically denies that the "Asserted Patents" "exemplify" "state-of-the-art optical filters" or are "indicative of Viavi's status as a world leader." PTOT notes further Viavi has withdrawn its claims concerning the '794 Patent with prejudice, *see* ECF 182, because that patent was held invalid in a proceeding from which no further appeal may be taken. PTOT denies the remaining allegations in Paragraph 4.

5. The Asserted Patents generally relate to low angle shift optical filters that employ hydrogenated silicon layers as a high refractive index layer, optical sensor systems including the novel filters, and methods of making the same.

<u>**Answer**</u>**:** The Asserted Patents speak for themselves, and at least one of the Asserted Patents has already been adjudged invalid in a final decision from which no further appeal may be taken. To the extent the allegations in Paragraph 5 seek to paraphrase or characterize the content of a written document, the document speaks for itself, and PTOT denies the allegations that are inconsistent with that document. Otherwise, denied.

6. In a typical gesture-recognition system, a light source emits near-infrared light towards a user. An optical filter is used to transmit the emitted light that is reflected by the user to the 3D image sensor, while substantially blocking ambient light. A 3D image sensor then detects the emitted light to provide a 3D image of the user. A processing system then analyzes the 3D image to recognize a gesture made by the user.

<u>**Answer**</u>**:** PTOT does not know what Viavi means by "a typical gesture-recognition system" and accordingly denies this paragraph.

7. The inventors of the Asserted Patents conceived of superior filter designs for such a use. The patented filter designs provide a deep suppression of unwanted ambient light, so that the filters can be used under a wide variety of extreme light conditions. The patented filter designs use hydrogenated silicon layers (which has a relatively high refractive index over the near-infrared wavelength range) to achieve superior optical performance, a desired reduction in filter thickness, and a reduced center wavelength shift with a change in incidence angle. Viavi has invested years of research and

development into its 3D motion sensing technology, and has been awarded several related patents, including the Asserted Patents, for its efforts.

**Answer**: PTOT admits that the Asserted Patents state on their face that they are assigned to Viavi Solutions Inc. Otherwise, denied.

8. Based on these inventions, Viavi was the first company to offer a commercial optical filter using hydrogenated silicon for 3D motion sensing. Viavi has enjoyed significant commercial success with its patented filter designs, and that success is reflective of the electronic consumer product industry recognizing and replicating features of Viavi's patented technology.

**Answer**: Denied.

9. Viavi's innovative optical filters won the 2017 Fierce Innovation Award for the Telecom category, which seeks to recognize "groundbreaking solutions" and "the most evolutionary and revolutionary technologies" in the industry. Exhibit 4. Through multiple generations of increasing performance and decreasing cost, Viavi has remained the industry's leading supplier of high-performance filters for motion sensing systems in consumer electronics.

**Answer**: To the extent the allegations in Paragraph 9 seek to paraphrase or characterize the content of Exhibit 4, the document speaks for itself, and PTOT denies the allegations inconsistent with that document. Otherwise, denied.

10. Suppliers to electronic device manufacturers, like PTOT, have incorporated Viavi's patented filter designs into their optical filters that are in turn used to produce sensing systems in high-end mobile phones and tablets featuring facial and gesture recognition technology, such as [redacted]. In fact, other companies in the industry have recognized the benefits of Viavi's inventions and have obtained licensing arrangements from Viavi to continue supplying their optical filters. *See* Exhibits 5 and 6.

**Answer**: To the extent the allegations in Paragraph 10 seek to paraphrase or characterize the content of Exhibit 5 and Exhibit 6, each of these documents speaks for itself, and PTOT denies the allegations inconsistent with those documents. Otherwise, denied.

## PROCEDURAL BACKGROUND

11. In 2019, Viavi filed patent infringement lawsuits against PTOT in China and Taiwan respectively, concerning PTOT's infringement of foreign counterparts to the Asserted Patents. From these lawsuits, PTOT had actual knowledge of, or was willfully blind to, the Asserted Patents. In early 2020, those lawsuits were resolved and dismissed. But the resolution was limited in time, and did not provide any protection from infringement after May 1, 2020.

**Answer:** PTOT admits that Viavi filed patent infringement lawsuits against PTOT in China and Taiwan alleging infringement of foreign counterparts to the Asserted Patents, that those lawsuits were resolved and dismissed in 2020, and that the resolution was limited in time. PTOT notes that at least one of the Asserted Patents has been adjudged invalid in a final decision from which no further appeal may be taken. PTOT denies the remaining allegations in Paragraph 11.

12. Since May 1, 2020, PTOT continued to make and sell low angle shift optical filters that employ hydrogenated silicon layers as a high refractive index layer and include the patented technology for inclusion in electronic devices that contain 3D camera modules and that are imported, used, offered for sale, and/or sold throughout the United States, including in this District.

**Answer:** Denied.

13. On July 14, 2020, Viavi sent PTOT a letter regarding PTOT's optical filters for 3D motion sensing modules, explaining Viavi's belief that PTOT's filters were infringing the Asserted Patents and that PTOT was knowingly selling its filters for incorporation into mobile devices intended for the U.S. market. *See* Exhibit 7. From this letter, PTOT had actual knowledge of the Asserted Patents and the infringing nature of its optical filters. *Id*.

**Answer:** PTOT admits that it received a letter from Viavi on or about July 14,2020. To the extent the allegations in Paragraph 13 seek to paraphrase or characterize the content of Exhibit 7, the document speaks for itself. Otherwise, denied.

14. At that time, PTOT held itself out as "one of the few manufacturers" that provide optical filters for 3D motion sensing modules to electronic device manufacturers. Exhibit 8. PTOT continues to make similar claims today, that it is "one of the few manufacturers in the industry that can meet the

requirements of 3D module filter specifications," noting that the "key features [are]: 1. Low Angle Shift 2. The spectral cut-off area achieves ultra-low penetration, that is, High OD (Optical Density), which can effectively suppress the visible light source." Exhibit 9 at 15.

**<u>Answer</u>:** To the extent the allegations in Paragraph 14 seek to paraphrase or characterize the content of Exhibit 8 and Exhibit 9, each of the documents speaks for itself. Otherwise, denied.

15. After not receiving a response to its letter as requested, Viavi filed suit against PTOT in this District in August 2020 (Case No. 5:20-cv-05501-EJD) ("Initial Suit") alleging patent infringement against PTOT's filters that that were made and sold for incorporation into devices imported, used, or sold in the United States after May 1, 2020. That case was voluntarily dismissed in May 2023 in favor of the above-captioned case.

**<u>Answer</u>:** PTOT admits that Viavi filed Case No. 5:20-cv-05501-EJD against PTOT in this District. The Initial Suit was resolved in PTOT's favor, and the Court held Viavi's actions in the Initial Suit "exceptional" within the meaning of 35 U.S.C. § 285. The record reflects that Viavi did not accuse "PTOT's filters .. made and sold for incorporation into devices importer, used, or sold in the United States after May 1, 2020," but rather the same filters that Viavi released in the lawsuits referenced in ¶ 11. As a consequence of Viavi's litigation misconduct, the Court entered an order entitling PTOT to recover more than $700,000 in attorneys' fees. Otherwise, denied.

16. In the present suit, Viavi originally pled that PTOT was liable at least for inducing infringement, by knowingly taking active steps to encourage and facilitate direct infringement by others. D.I. 1. On October 21, 2022, Viavi filed a Motion for Leave to File a Second Amended Complaint in this action, which alleged direct infringement based on information obtained during discovery, as discussed in the allegations below. D.I. 87.

**<u>Answer</u>:** Dkts. 1 and 87 speak for themselves. Otherwise, denied.

17. On October 13, 2023, this Court granted PTOT's Motion for Summary Judgment with respect to Viavi's allegation of induced infringement, but also granted Viavi's Motion to File a Second Amended Complaint (SAC) to add a claim for direct infringement of the Asserted Patents. *See generally* D.I. 141, 142.

**Answer:** PTOT admits that the Court granted summary Judgment in favor of PTOT regarding Viavi's induced infringement claims. Dkts. 141 and 142 speak for themselves. Otherwise, denied.

18. On February 23, 2024, the Court granted PTOT's Motion to Dismiss Viavi's SAC but granted Viavi leave to file this Third Amended Complaint. *See generally* D.I. 160.

**Answer:** Admitted.

**PARTIES AND THE ALLEGEDLY INFRINGING ACTIVITY**

19. Viavi is a Delaware corporation with a place of business in this District at 3047 Orchard Parkway, Suite 10, San Jose, California 95134. Viavi also maintains its state-of-the-art research and development facility and a major production facility in this District in Santa Rosa, California.

**Answer:** PTOT lacks sufficient knowledge or information on which to form a belief regarding the allegations contained in Paragraph 19 and, therefore, denies them.

20. Viavi is the owner and assignee of each of the Asserted Patents and holds the right to sue and recover for past, present, and future infringement thereof, including by PTOT.

**Answer:** PTOT admits that the Asserted Patents list Viavi Solutions Inc. as the assignee. PTOT denies that Viavi has the right to sue PTOT based on infringement of the Asserted Patents generally and particularly for any alleged infringement prior to May 2020 and any infringement of the '794 Patent (which has been held invalid in a final decision from which no further appeal may be taken). Otherwise, denied.

21. On information and belief, PTOT is a company organized under the laws of Taiwan, with its principal place of business and headquarters located at 37, Ko Chi 2nd Rd., Hua Ya Technology Park, Gueishan District, Taoyuan City, 33383 Taiwan.

**Answer:** Admitted.

22. [redacted] for incorporation into [redacted] electronic devices, including mobile phones.

**Answer:** PTOT admits that some of its optical filters meet certain requirements set by [redacted], Inc. PTOT admits that it sells optical filters to customers outside of the United States. PTOT lacks

sufficient knowledge or information on which to form a belief regarding the remaining allegations contained in Paragraph 22 and, therefore, denies them.

23. For example, [redacted]. When [redacted] refers to a filter design such as [redacted], it is referring to the specific filter design referred to as [redacted] that has been qualified to be used in certain [redacted]. Duffy Decl., ¶ 5. The [redacted] filter is used in the world-facing camera in the [redacted]. *Id.* The [redacted] filter is used in user-facing cameras in the [redacted]. *Id.*

**Answer:** PTOT admits that some of its optical filters meet certain requirements set by [redacted], Inc. PTOT admits that it sells optical filters to customers outside of the United States. Otherwise, denied for lack of information and belief.

24. [redacted]. D.I. 88-9 at 16.

**Answer:** Denied. Further, D.I. 88-9 is a highly confidential 3rd party document, to which PTOT does not have access.

25. Viavi purchased in the United States an [redacted] that included a PTOT filter in the phone's world-facing camera. Case No. 5:20-cv-05501-EJD (SVK), D.I. 114-2 at ¶ 10, Figs. 2, 3. This filter is referred to as Filter #25 or the "PTOT Infringing Filter." *See* D.I. 1 at 6- 8; D.I. 1-9. Because [redacted] filters are used in world-facing cameras in the [redacted], Filter #25 is PTOT [redacted] filter. *See* Duffy Decl., ¶ 5.

**Answer:** Denied.

26. [redacted] provides engineering requirements for the [redacted], and other filters in a document referred to as the [redacted]. Exhibit 15 at p. 6.

**Answer**: Plaintiff has not permitted PTOT to view Exhibit 15 or the entirety of ¶ 26. As such, PTOT lacks knowledge or information sufficient on which to form a belief regarding the allegations contained in ¶ 26 and, therefore, denies them.

27. The figure below from the [redacted] depicts a [redacted] wafer and [redacted] filters that can be singulated (or diced) from the [redacted] wafer. Exhibit 15 at p. 25. In the image, the grey area represents a dicing ring and the turquoise area from [redacted]. Cole Decl., ¶ 10; Duffy Decl., ¶ 10. The entire turquoise and blue area inside the [redacted] represents a wafer, and in this case, a [redacted]. *Id*. The blue areas illustrate where production filters can be singulated (or diced) from the [redacted] wafer. *Id*.

[redacted]

Exhibit 15 at p. 25.

**Answer**: Plaintiff has not permitted PTOT to view Exhibit 15 or the entirety of ¶ 27. As such, PTOT lacks knowledge or information sufficient on which to form a belief regarding the allegations contained in ¶ 27 and, therefore, denies them.

28. The [redacted] wafer can also be diced into other sizes larger or smaller than the size of the [redacted] production filters, and the result of the dicing process, whether a diced [redacted] wafer or [redacted] production filter would be referred to as a die. Cole Decl., ¶¶ 10, 11. Any sized die (e.g., [redacted] diced wafers, [redacted] production filters) singulated from the [redacted] wafer would be originate from the same area in the [redacted] wafer—the area inside 200 mm. Cole Decl., ¶ 10; Duffy Decl., ¶¶ 10, 12.

**Answer**: Plaintiff has not permitted PTOT to view the Cole or Duffy Declarations in their entirety. As such, PTOT lacks knowledge or information sufficient on which to form a belief regarding the allegations contained in ¶ 28 and, therefore, denies them.

29. Once a design for a filter is set by [redacted], a supplier, like Viavi or PTOT, cannot change the design without [redacted] permission. Duffy Decl., ¶ 8. This restriction applies to the optical coating design and filter stack. *Id.* at ¶ 8. As a result, any [redacted] die (e.g., a [redacted] diced wafer, [redacted] production filter) would meet the [redacted] design set by [redacted]. *Id.* at ¶ 13.

**Answer**: Denied.

30. On August 26, 2020, during the pendency of the Initial Suit, [redacted] asked Viavi to send "[redacted] wafers diced to 20x20 mm squares" to [redacted] in the United States. Exhibit 16 at 4. To meet the request, Viavi fabricated a [redacted] wafer including the same filter stack design as the production [redacted] filters that Viavi provides to [redacted]. *Id.* at ¶ 12. Viavi then diced the [redacted] wafer into 20 × 20 mm squares, and sent them to [redacted] in the United States. *Id.* at ¶¶ 12, 13.

**Answer**: To the extent the allegations in Paragraph 16 seek to paraphrase or characterize the content of Exhibit 16, the document speaks for itself. Otherwise, denied.

31. Subject to very minor manufacturing tolerances, the diced [redacted] wafers would have included the same coating, filter stack, and optical properties as a production [redacted] filter. Duffy Decl., ¶¶ 11-13; Cole Decl., ¶¶ 11, 13, 14. The resulting [redacted] diced samples would differ from a production

[redacted] filter only with respect to size, but would exhibit the same optical properties. Duffy Decl., ¶¶ 11-13; Cole Decl., ¶¶ 11, 13, 14.

**Answer**: Denied.

32. On information and belief, [redacted] requested the [redacted] diced wafers to perform its own testing or analysis of the filter stack and optical properties of the [redacted] wafers that Viavi was producing. Duffy Decl., ¶¶ 13, 14; Cole Decl., ¶¶ 12, 14.

**Answer**: PTOT lacks knowledge or information sufficient on which to form a belief regarding the allegations in ¶ 32 and, therefore, denies them.

33. On August 26, 2020, [redacted] also asked to [redacted] to send "[redacted] wafers diced to 20x20 mm squares" to the United States. Exhibit 10 (PTOT Interrogatory Responses) at 7; Exhibit 11 (Lin Dep. Tr., Sep. 28, 2022) at 48:21-50:2; Exhibit 12 (PTOT_0000031-34). PTOT directly sent the "[redacted] wafers diced to 20x20 mm squares" ("[redacted] Samples") from Taiwan to [redacted] in the United States. *Id.*

**Answer**: PTOT's interrogatory responses speak for themselves. Otherwise, denied.

34. Upon information and belief, title to the [redacted] samples transferred to [redacted] in the United States for which PTOT received consideration, including continued participation in the [redacted] supply chain.

**Answer**: Denied.

35. In connection with the shipment of [redacted] samples, [redacted]. Exhibit 12.

**Answer**: Exhibit 12 speaks for itself. Otherwise, denied.

36. PTOT and [redacted] (and Viavi and [redacted]) describe the samples using the name [redacted]. A participant in the photonics industry, such as PTOT, would understand that [redacted] was asking for [redacted] diced wafers (i.e., [redacted] dies) cut or otherwise originating from a [redacted] wafer. Duffy Decl., ¶ 11; Cole Decl., ¶ 12. A die originating from a [redacted] wafer could refer to a [redacted] production filter or a diced [redacted] wafer of any size. Cole Decl., ¶ 11. All [redacted] dies would have the same optical properties and filter stack, subject to minor manufacturing tolerances across the area of the wafer and potentially among wafers in different manufacturing runs. *Id.* at ¶ 11.

**Answer**: PTOT admits that [redacted] requested [redacted] wafers diced to 20x20 mm squares on August 27, 2020. Otherwise, denied.

37. The difference between the PTOT [redacted] samples and one example of what was originally referred to as a PTOT Infringing Filter in Viavi's Original Complaint is its size; the design of the filter stack and its optical properties would be the same. Cole Decl., ¶¶ 11, 14; Exhibit 13 (Lin Dep. Tr., Sep. 29, 2022) at 126:12-17, 127:5-11, 128:13-19. It is possible to analyze the optical properties of a [redacted] production filter to determine the properties of a diced [redacted] wafer (as they will be the same), and vice versa. Cole Decl., ¶ 14.

**Answer**: Denied.

## JURISDICTION AND VENUE

38. This action arises under the United States Patent Act, codified at 35 U.S.C. § 1 et seq., and in particular, 35 U.S.C. §§ 271 and 281-285.

**Answer**: Admitted.

39. This Court has original jurisdiction over the subject matter of this action under 28 U.S.C. §§ 1331 and 1338(a) because the claims arise under the patent laws of the United States.

**Answer**: Admitted.

40. This Court has personal jurisdiction over PTOT because it has directly imported from Taiwan its infringing products into the United States, California, and this District.

**Answer**: PTOT does not contest this Court's personal jurisdiction. Otherwise, denied.

41. By knowingly and directly importing its infringing products into the United States, California, and this District, PTOT has purposefully availed itself of the privileges of conducting business in the United States, California and this District, and sought the protection and benefits from the laws of the United States and California and thus has subjected itself to personal jurisdiction here.

**Answer**: Denied.

42. This Court has venue over PTOT under 28 U.S.C. § 1391 because, among other reasons, PTOT is a foreign corporation that does not reside in the United States and therefore may be sued in any United States judicial district, including this District.

**Answer**: Paragraph 42 contains legal conclusions to which no response is required. For purposes of this action, PTOT does not contest venue.

**FIRST CLAIM FOR RELIEF**

(Alleged Infringement of U.S. Patent No. 9,588,269)

43. Viavi incorporates by reference the allegations contained in paragraphs 1 through 42 above.

**Answer**: PTOT incorporates by reference its answers to ¶¶ 1-42.

44. The '269 patent entitled "Optical Filter and Sensor System" issued on March 7, 2017. A copy of the '269 patent is attached as Exhibit 1.

**Answer**: PTOT admits that what appears to be a copy of U.S. Patent No. 9,588,269 ('the "'269 Patent") is attached to the Third Amended Complaint as Exhibit 1. PTOT admits that the '269 Patent is titled "Optical Filter and Sensor System." PTOT admits that the '269 Patent lists on its face the issue date as March 7, 2017.

45. PTOT is liable for direct infringement of the '269 patent in violation of 35 U.S.C. § 271(a) by at least the acts of selling, offering for sale, and/or importing into the United States its products, including without limitation optical filters sent directly and sold to [redacted] in the United States, that infringe at least one claim of the '269 patent, e.g., claim 1. *See* Exhibits 10-14.

**Answer**: Denied.

46. The optical filter charted with respect to the Asserted Patents in Exhibit 14 represents a [redacted] filter found in an [redacted] in the United States. *See* Exhibit 14; Case No. 5:20-cv-05501-EJD (SVK), D.I. 114-2 at ¶ 10, Figs. 2, 3; Duffy Decl., ¶ 5. PTOT's [redacted] Samples would have the same filter stack and optical properties as the optical filter described in Exhibit 14. Cole Decl., ¶¶ 11, 14.

**Answer**: Denied.

47. PTOT's [redacted] represent one or more optical filters comprising a filter stack that has a plurality of thin film hydrogenated silicon layers that have a refractive index greater than 3 over a wavelength range of 800 to 1100 nm, and a plurality of thin film lower refractive index layers that have

a refractive index less than 3 over the wavelength range of 800 to 1100 nm. *See* Exhibit 14. Within this design, the plurality of thin film lower refractive index layers alternate, in a one-to-one ratio, with the plurality of thin film hydrogenated silicon layers. *Id.* The filter additionally exhibits interference that creates a passband that at least partially overlaps with the wavelength range of 800 to 1100 nm and the passband has a center wavelength that shifts by less than 20 nm in magnitude with a change in an incidence angle between 0° and 30°. *Id.*

**<u>Answer</u>:** Denied.

48. Viavi has been damaged by PTOT's infringement, and will continue to be damaged by PTOT's infringement, of the '269 patent, and thus is entitled to recover damages from PTOT to compensate it for the infringement.

**<u>Answer</u>:** Denied.

49. Viavi is entitled to damages adequate to compensate it for the infringement but in no event less than a reasonable royalty.

**<u>Answer</u>:** Denied.

50. PTOT's past infringement (since May 1, 2020), including the importation and/or sale of the [redacted], and/or any continuing infringement has been deliberate and willful.

**<u>Answer</u>:** Denied.

## <u>SECOND CLAIM FOR RELIEF</u>

(Alleged Infringement of U.S. Patent No. 10,222,526)

51. Viavi incorporates by reference the allegations contained in paragraphs 1 through 50 above.

**<u>Answer</u>:** PTOT incorporates by reference its answers to ¶¶ 1-50.

52. The '526 patent entitled "Optical Filter and Sensor System" issued on March 5, 2019. A copy of the '526 patent is attached as Exhibit 2.

**<u>Answer</u>:** PTOT admits that what appears to be a copy of U.S. Patent No. 10,222,526 (the "'526 Patent") is attached to the Third Amended Complaint as Exhibit 2. PTOT admits that the '526 Patent is

titled "Optical Filter and Sensor System." PTOT admits that the '526 Patent lists on its face the issue date as March 5, 2019.

53. PTOT is liable for direct infringement of the '526 patent in violation of 35 U.S.C. § 271(a) by at least the acts of selling, offering for sale, and/or importing into the United States its products, including without limitation optical filters sent directly and sold to [redacted] in the United States, that infringe at least one claim of the '526 patent, e.g., claim 27. *See* Exhibits 10-14.

**Answer**: Denied.

54. The optical filter charted with respect to the Asserted Patents in Exhibit 14 represents a PTOT [redacted] filter found in an [redacted] in the United States. *See* Exhibit 14; Case No. 5:20-cv-05501-EJD (SVK), D.I. 114-2 at ¶ 10, Figs. 2, 3; Duffy Decl., ¶ 5. PTOT's [redacted] would have the same filter stack and optical properties as the optical filter described in Exhibit 14. Cole Decl., ¶¶11,14.

**Answer**: Denied.

55. PTOT's [redacted] represent one or more optical filters comprising a plurality of layers that include hydrogenated silicon layers and lower refractive index layers, with a passband that has a center wavelength that shifts by less than 13 nm in magnitude with a change in an incidence angle between 0° and 30°. *See* Exhibit 14.

**Answer**: Denied.

56. Viavi has been damaged by PTOT's infringement, and will continue to be damaged by PTOT's infringement of the '526 patent, and thus is entitled to recover damages from PTOT to compensate it for the infringement.

**Answer**: Denied.

57. Viavi is entitled to damages adequate to compensate it for the infringement but in no event less than a reasonable royalty.

**Answer**: Denied.

58. PTOT's past infringement (since May 1, 2020) including the importation and/or sale of the [redacted], and/or any continuing infringement has been deliberate and willful.

**Answer**: Denied.

## THIRD CLAIM FOR RELIEF

(Alleged Infringement of U.S. Patent No. 11,131,794)

59. Viavi incorporates by reference the allegations contained in paragraphs 1 through 58 above.

**Answer**: This claim has been withdrawn, so no response is required. ECF 182.

60. The ’794 patent entitled “Optical Filter and Sensor System” issued on September 28, 2021. A copy of the ’794 patent is attached as Exhibit 3.

**Answer**: This claim has been withdrawn, so no response is required. ECF 182.

61. PTOT is liable for direct infringement of the ’794 patent in violation of 35 U.S.C. § 271(a) by at least the acts of selling, offering for sale, and/or importing into the United States its products, including without limitation optical filters sent directly and sold to [redacted] in the United States, that infringe at least one claim of the ’794 patent, e.g., claim 9. *See* Exhibits 10-14.

**Answer**: This claim has been withdrawn, so no response is required. ECF 182.

62. The optical filter charted with respect to the Asserted Patents in Exhibit 14 represents a PTOT [redacted] filter found in an [redacted] in the United States. *See* Exhibit 14; Case No. 5:20-cv-05501-EJD (SVK), D.I. 114-2 at ¶ 10, Figs. 2, 3; Duffy Decl., ¶ 5. PTOT’s [redacted] would have the same filter stack and optical properties as the optical filter described in Exhibit 14. Cole Decl., ¶¶ 11, 14.

**Answer**: This claim has been withdrawn, so no response is required. ECF 182.

63. PTOT’s [redacted] represent one or more optical filters comprising a set of layers including silicon and hydrogen and a set of layers including oxygen, with a center wavelength that shifts by less than 15 nm in magnitude with a change in an incidence angle between 0° and 30°. *See* Exhibit 14.

**Answer**: This claim has been withdrawn, so no response is required. ECF 182.

64. Viavi has been damaged by PTOT's infringement, and will continue to be damaged by PTOT's infringement, of the '794 patent, and thus is entitled to recover damages from PTOT to compensate it for the infringement.

**Answer**: This claim has been withdrawn, so no response is required. ECF 182.

65. Viavi is entitled to damages adequate to compensate it for the infringement but in no event less than a reasonable royalty.

**Answer**: This claim has been withdrawn, so no response is required. ECF 182.

66. PTOT's past infringement (since May 1, 2020) including the importation and/or sale of the [redacted], and/or any continuing infringement has been deliberate and willful.

**Answer**: This claim has been withdrawn, so no response is required. ECF 182.

## JURY DEMAND

Viavi's jury demand does not require admission or denial.

## PRAYER FOR RELIEF

This paragraph and subparagraphs "1" through "4" constitute a prayer for relief. PTOT denies that Plaintiff is entitled to judgment or to any relief, legal or equitable, and specifically denies that Plaintiff is entitled to each item of relief requested in each of subparagraphs "1" through "4."

## GENERAL DENIAL

Except as explicitly admitted herein, PTOT denies each and every allegation contained in Viavi's Third Amended Complaint.

## PTOT'S DEFENSES

PTOT alleges and asserts the following defenses in response to the allegations in Plaintiff's Third Amended Complaint, undertaking the burden of proof only as to those defenses deemed affirmative defenses of law.

## FIRST DEFENSE

### (Failure to State a Claim Upon Which Relief Can Be Granted)

1. Plaintiff's Complaint fails to state a claim upon which relief can be granted.

**SECOND DEFENSE**

**(Non-Infringement of the Asserted Patents)**

2. The manufacture, use, offer for sale, sale, or importation of the accused filter has not, does not, and will not infringe, either literally or under the doctrine of equivalents, any valid and enforceable claim of the Asserted Patents, whether directly, indirectly, contributorily, and/or by inducement.

3. For example, and without limitation, the accused filter does not have all limitations of the claims for which infringement is alleged at least because the accused filter comprises hydrogenated silicon nitride instead of hydrogenated silicon. Additionally, an invalid claim cannot be infringed, and all of the claims of the Asserted Patents are invalid.

**THIRD DEFENSE**

**(Invalidity of the Asserted Patents)**

4. All Asserted Claims of each Asserted Patent are invalid for failure to satisfy one or more provisions of the patentability requirements specified in 35 U.S.C. §§ 101, 102, 103, and/or 112.

5. For example and without limitation, one or more claims of the Asserted Patents are anticipated and/or rendered obvious in view the prior art, including without limitation: U.S. Patent 5,398,133; K. Gibbons, *Development and Implementation of a Hydrogenated a-Si Reactive Sputter Deposition Process*, Soc. Of Vacuum Coaters, 50th Ann. Conf. Proc., pp. 327-330 (2007); B. M. Lairson, et al., *Reduced Angle-Shift Infrared Bandpass Filter Coatings*, Proc. SPIE 6545, Window and Dome Technologies and Materials X, 6545C (May 2007); U.S. Patent No. 9,077,868; U.S. Patent Application Publication No. 2012/0182392; U.S. Patent No. 9,322,965; Tsai, et al., *Amorphous silicon and amorphous silicon nitride films prepared by a plasma-enhanced chemical vapor deposition process as optical coating materials*, Applied Optics, Vol. 32, No. 28, pp.5561-5566 (Oct. 1, 1993); H. Yoda, et

al., *a-Si:H/SiO2 multilayer films fabricated by radio-frequency magnetron sputtering for optical filters*, Applied Optics, Vol. 43, No. 17 (Jun. 10, 2004).

**<u>FOURTH DEFENSE</u>**

**(Inequitable Conduct Re: the ’269 and ’526 Patents)**

6. All Asserted Claims of the ’269 and ’526 Patents are unenforceable for, among other reasons, inequitable conduct. Viavi intentionally withheld information material to the patentability of the claims of the ’269 and ’526 Patents from the U.S. Patent and Trademark Office (“USPTO”) during prosecution.

7. Specifically, during the prosecution of the European counterpart to the Asserted Patents at issue in this Investigation, a third party submitted to the EPO a document in German showing that U.S. Patent No. 5,398,133 filed by Tsai et al. in 1993 (“Tsai ’133”), exhibited a center wavelength shift of less than 20 nm. The third party also submitted specific pages of a technical treatise: H.A. Macleod, “Thin Film Optical Filters,” Third Edition, pages 283-287, Institute of Physics Publishing (Dec. 31, 2001).

8. Viavi repeatedly relied upon the center wavelength shift as a basis for distinguishing the claims from the prior art, and it was clear that the examiner had no ability to determine the inherent center wavelength shift of Tsai’s filter designs. Nevertheless, Viavi continued to pursue claims directed to center wavelength shift.

9. Viavi subsequently chose to submit to the USPTO the very same pages of the Macleod reference provided to the EPO by the third party while omitting the simulation results of Tsai’s filter designs by the third party. Upon information and belief, therefore, Viavi made a selective decision to withhold material information (i.e., the center wavelength shift of Tsai’s filters and the third party simulation results) from the USPTO in connection with the prosecution of the Asserted Patents.

**FIFTH DEFENSE**

**(Improper Inventorship)**

10. On information and belief, one or more of the Asserted Patents are unenforceable for failure to name the correct inventors of the alleged inventions.

**SIXTH DEFENSE**

**(Limitation on Damages)**

11. Plaintiff's claims for relief are statutorily limited in whole or part by Title 35 of the United States Code, including without limitation 35 U.S.C. § 286 and/or 35 U.S.C. § 287. 12. For example and without limitation, Plaintiff's claims for damages are limited under 35 U.S.C. § 287(b)(2).

12. Specifically, Plaintiff is barred from recovering damages from PTOT prior to the date PTOT had actual notice that it was allegedly infringing the claims of the Asserted Patents.

**SEVENTH DEFENSE**

**(License/Patent Exhaustion)**

13. Viavi's claims for relief are barred in part by licenses granted by Viavi to PTOT or by the doctrine of patent exhaustion. Additionally, Viavi's claims for relief are barred by agreements between Viavi and the third party to which the Accused Samples (***the only accused products in this case***) were sent.

**EIGHTH DEFENSE**

**(No Willful Infringement of the Asserted Patents)**

14. PTOT has not willfully infringed the Asserted Patents.

**NINTH DEFENSE**

**(No Attorney Fees)**

15. Plaintiff is not entitled to any attorney fees under 35 U.S.C. § 285.

## OTHER DEFENSES

16. PTOT's investigation is ongoing and PTOT has not yet obtained full discovery from Plaintiff, the prosecuting attorney, or third parties. PTOT reserves the right to amend its Answer to include other defenses that PTOT may learn of during the course of its investigation and after obtaining discovery from Plaintiff, the prosecuting attorney, and third parties.

## COUNTERCLAIMS

For their Counterclaims, Platinum Optics Technology Inc. alleges as follows:

### NATURE OF ACTION

1. This is an action seeking declaratory judgments of non-infringement and invalidity of U.S. Patent Nos. 9,588,269 (the "'269 Patent") and 10,222,526 (the "'526 Patent") (collectively "the Asserted Patents").

### PARTIES

2. PTOT is a company organized under the laws of Taiwan, with its headquarters located at No. 37, Keji 2nd Rd., Hua Ya Technology Park, Guishan Dist., Taoyuan City, 33383 Taiwan (R.O.C.).

3. On information and belief, Viavi is a Delaware corporation with its principal place of business in this District at 3047 Orchard Parkway, Suite 10, San Jose, California 95134. Viavi also maintains a research and development facility and a production facility in this District in Santa Rosa, California.

### JURISDICTION AND VENUE

4. This Court has subject matter jurisdiction over PTOT's Counterclaims for declaratory Judgment under 28 U.S.C. §§ 2201 and 2202, because an actual controversy exists by virtue of Viavi's Third Amended Complaint for alleged patent infringement.

5. Viavi has submitted to personal jurisdiction in this Court through the filing of the Original Complaint against PTOT.

6. Venue is proper here as to these Counterclaims under 28 U.S.C. §§ 1391(b)-(c) and 28 U.S.C. § 1400(b).

**FIRST COUNTERCLAIM**

**(DECLARATORY JUDGMENT OF NON-INFRINGEMENT OF THE '269 PATENT)**

7. PTOT incorporates by reference ¶¶ 1-6.

8. In its Third Amended Complaint, Viavi avers that PTOT infringes the '269 Patent.

9. PTOT does not infringe and has not infringed any claims of the '269 Patent under any theory of infringement at least because the accused filter comprises hydrogenated silicon nitride instead of hydrogenated silicon.

10. Accordingly, there exists an actual justiciable controversy between Viavi and PTOT with respect to infringement of the '269 Patent.

11. PTOT thereby seeks entry of a declaratory judgment that it does not infringe any claim of the '269 Patent.

**SECOND COUNTERCLAIM**

**(DECLARATORY JUDGMENT OF NON-INFRINGEMENT OF THE '526 PATENT)**

12. PTOT incorporates by reference ¶¶1-6.

13. In its Third Amended Complaint, Viavi avers that PTOT infringes the '526 Patent.

14. PTOT does not infringe and has not infringed any claims of the '526 Patent under any theory of infringement at least because the accused filter comprises hydrogenated silicon nitride instead of hydrogenated silicon.

15. Accordingly, there exists an actual justiciable controversy between Viavi and PTOT with respect to infringement of the '526 Patent.

16. PTOT thereby seeks entry of a declaratory judgment that it does not infringe any claim of the '526 Patent.

**THIRD COUNTERCLAIM**

**(DECLARATORY JUDGMENT OF INVALIDITY OF THE '269 PATENT)**

17. PTOT incorporates by reference ¶¶ 1-6.

18. The claims of the ’269 Patent are invalid for failure to comply with the requirements of Title 35, United States Code, including, but not limited to, Sections 101, 102, 103, and/or 112.

19. For example and without limitation, the claims of the ’269 Patent are anticipated and/or rendered obvious in view the prior art, including: U.S. Patent 5,398,133; K. Gibbons, *Development and Implementation of a Hydrogenated a-Si Reactive Sputter Deposition Process*, Soc. Of Vacuum Coaters, 50th Ann. Conf. Proc., pp.327-330 (2007); B. M. Lairson, et al., *Reduced Angle-Shift Infrared Bandpass Filter Coatings*, Proc. SPIE 6545, Window and Dome Technologies and Materials X, 6545C (May 2007); U.S. Patent No. 9,077,868; U.S. Patent Application Publication No. 2012/0182392; U.S. Patent No. 9,322,965; Tsai, et al., *Amorphous silicon and amorphous silicon nitride films prepared by a plasma-enhanced chemical vapor deposition process as optical coating materials*, Applied Optics, Vol. 32, No. 28, pp.5561-5566 (Oct. 1, 1993); H. Yoda, et al., *a-Si:H/SiO2 multilayer films fabricated by radio-frequency magnetron sputtering for optical filters*, Applied Optics, Vol. 43, No. 17 (Jun. 10, 2004).

20. Based on the Third Amended Complaint filed against PTOT, a justiciable and actual controversy now exists between Viavi and PTOT concerning the validity of the ’269 Patent.

21. PTOT hereby seeks entry of a declaratory judgment that the claims of the ’269 Patent are invalid.

**FOURTH COUNTERCLAIM**

**(DECLARATORY JUDGMENT OF INVALIDITY OF THE ’526 PATENT)**

22. PTOT incorporates by reference ¶¶ 1-6.

23. The claims of the ’526 Patent are invalid for failure to comply with the requirements of Title 35, United States Code, including, but not limited to, Sections 101, 102, 103, and/or 112.

24. For example and without limitation, the claims of the ’526 Patent are anticipated and/or rendered obvious in view the prior art, including: U.S. Patent 5,398,133; K. Gibbons, *Development and Implementation of a Hydrogenated a-Si Reactive Sputter Deposition Process*, Soc. Of Vacuum Coaters,

50th Ann. Conf. Proc., pp.327-330 (2007); B. M. Lairson, et al., *Reduced Angle-Shift Infrared Bandpass Filter Coatings*, Proc. SPIE 6545, Window and Dome Technologies and Materials X, 6545C (May 2007); U.S. Patent No. 9,077,868; U.S. Patent Application Publication No. 2012/0182392; U.S. Patent No. 9,322,965; Tsai, et al., *Amorphous silicon and amorphous silicon nitride films prepared by a plasma-enhanced chemical vapor deposition process as optical coating materials*, Applied Optics, Vol. 32, No. 28, pp.5561-5566 (Oct. 1, 1993); H. Yoda, et al., *a-Si:H/SiO2 multilayer films fabricated by radio-frequency magnetron sputtering for optical filters*, Applied Optics, Vol. 43, No. 17 (Jun. 10, 2004).

25. Based on the Third Amended Complaint filed against PTOT, a justiciable and actual controversy now exists between Viavi and PTOT concerning the validity of the ’526 Patent.

26. PTOT hereby seeks entry of a declaratory judgment that the claims of the ’526 Patent are invalid.

## PRAYER FOR RELIEF

Wherefore, PTOT prays that this Court enter judgment:

a. For dismissal of the Third Amended Complaint with prejudice;

b. For a judgment that the claims of the ’269 Patent are not infringed;

c. For a judgment that the claims of the ’526 Patent are not infringed;

d. For a judgment that the claims of the ’269 Patent are invalid;

e. For a judgment that the claims of the ’526 Patent are invalid;

f. For an award of all costs incurred by PTOT in this action; and

g. For all such other and further relief as this Court deems just and equitable.

## JURY DEMAND

Counterclaimant PTOT demands a trial by jury for all issues so triable.

## RESERVATION OF RIGHTS

PTOT reserves the right to amend its Counterclaims to, for example, assert additional counterclaims based on information which may be discovered during the course of discovery.

Dated: February 20, 2025

**GREENBERG TRAURIG, LLP**

By: */s/ David S. Bloch*

David S. Bloch (SBN 184530)
blochd@gtlaw.com
GREENBERG TRAURIG, LLP
101 Second Street, Suite 2200
San Francisco, CA 94105-3668
Telephone: (415) 590-5110
Facsimile: (415) 707-2010

*Attorneys for Defendant*
*Platinum Optics Technology Inc.*